David M. Kurtzemann v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-126-CR

     DAVID M. KURTZEMANN,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 209th District Court
Harris County, Texas
Trial Court # 721867
                                                                                                                

O P I N I O N
                                                                                                                
      Appellant Kurtzemann appeals from his conviction for felony driving while intoxicated
(enhanced by a prior felony conviction) for which he was sentenced to 16 years in the Texas
Department of Criminal Justice-Institutional Division.
      Appellant was indicted for felony driving while intoxicated, enhanced by a prior felony escape
conviction. Appellant pled guilty to the charge and "true" to the enhancement. After
consideration of a presentence investigation the trial judge sentenced Appellant to 16 years in
prison.
      Appellant appeals on one point of error: "The trial court incorrectly admonished Appellant
regarding the range of punishment."
      Appellant does not challenge the sufficiency of the evidence to support his plea of guilty. 
There was no plea bargain. This was an open plea.
      Appellant was charged with the third degree felony offense of driving while intoxicated,
enhanced by one prior felony conviction. The punishment range for a third degree felony,
enhanced by one prior felony conviction, is "not more than 20 years or less than 2 years (plus a
possible fine). Tex. Penal Code §§ 12.34(a), 12.41(a)(3).
      The trial court admonished Appellant that the punishment range was "life or not more than
99 years or less than 5 years (plus a possible fine)." Article 26.13(a)(1) requires the trial court
to admonish a defendant on the range of punishment for the offense prior to accepting the guilty
plea. Article 26.13(c) provides that substantial compliance by the court is sufficient unless the
defendant affirmatively shows that he is not aware of the consequences of his plea and that he was
misled or harmed by the admonishment of the court.
      Where there is no admonishment as to the range of punishment when a defendant pleads
guilty, fundamental error occurs without regard to whether the defendant is harmed. Ex parte
Smith, 678 S.W.2d 78, 79 (Tex. Crim. App. 1984). But an admonishment which is incorrect, as
here, constitutes substantial compliance with Article 26.13. In each situation the burden shifts to
the defendant to establish that he was unaware of the consequences of this plea and was misled or
harmed by the court’s admonishment. Eatman v. State, 768 S.W.2d 310, 311 (Tex. Crim. App.
1989); Robinson v. State, 739 S.W.2d 795, 801 (Tex. Crim. App. 1989); Hughes v. State, 833
S.W.2d 137, 140 (Tex. Crim. App. 1992); Ramos v. State, 928 S.W.2d 157, 160 (Tex.
App.—Houston [14th Dist.] 1996, no pet.).
      Hughes, supra, succinctly states the rule: “Substantial compliance will only be found where
a trial court has undertaken to admonish the defendant, the sentence is within the range prescribed
by law, and the defendant has failed to affirmatively show harm.” 
      In this case there is no evidence that Appellant would have agreed to enter his plea if he had
been properly admonished. Appellant’s complaint was not raised in a motion for a new trial and
there is no indication in the record that Appellant’s plea decision would have been different had
he been properly admonished. Appellant’s punishment was fixed at 16 years which was within
the applicable statutory range. No harm is shown.
      Appellant’s point is overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed December 10, 1997
Do not publish



ls, or sets up a
criminal instrument. 
(b) For purposes of this section, “criminal instrument” means anything the possession,
manufacture, or sale of which is not otherwise an offense, that is specially designed, made, or
adapted for use in the commission of an offense. 
(c) An offense under Subsection (a)(1) is one category lower than the offense intended. An
offense under Subsection (a)(2) is a state jail felony.
Tex. Pen. Code Ann. § 16.01 (emphasis added). 
      The Court of Criminal Appeals has addressed the intended application of this statute only once.
See Fronatt v. State, 543 S.W.2d 140 (Tex. Crim. App. 1976). In Fronatt v. State, the defendant’s
parole was revoked upon a finding that he possessed a criminal instrument under 16.01(a)(1). In
considering the intended meaning behind the definition of criminal instrument found in 16.01(b),
the Court of Criminal Appeals turned to a federal interpretation of the statute, stating that section
16.01 is aimed at incipient crime. Id. at 142 (citing Universal Amusement Co. v. Vance, 404
F.Supp. 33 (S.D.Tex.1975)). Further, the Court stated, section 16.01 is not only not aimed at an
instrument which has lawful uses, but rather is not aimed at overt criminal actions at all. The Court
clarified that this statute was designed to deal with a very small class of property which can be used
only for the commission of crime and to deal with persons in possession of such property or
engaged in the manufacture or adaptation of the property exclusively for use in criminal activities,
before the criminal activities are undertaken or completed. Id. We believe that the fake money
bound in such a way as to appear to be large sums of real money fits within the purview of 16.01.
      We recognize that the fact that an object can be used to commit a crime does not make it a
criminal instrument. Eodice v. State questioned whether Universal Amusement “overstated the
point” by suggesting that the commission of a crime must be the only use for a criminal instrument,
however stating that “it is certainly clear from the statutory definition that the commission of a
crime must be the object's primary purpose.” Eodice v. State, 742 S.W.2d 844, 846 (Tex.
App.—Austin 1987, no pet.) (emphasis in original). From the evidence offered during Carter’s
trial, it is clear that the commission of a crime was the primary purpose of creating the bundles to
look like money. 
      Carter argues that the bundles of fake and real money cannot fit the definition of a criminal
instrument because they have lawful uses. For example, he asserts, one could give the bundles of
money as a gag gift. However, we believe that Carter is misinterpreting the meaning of “no lawful
uses.” In Eodice, where the defendant’s conviction was reversed because the instruments had
lawful uses, their uses were specifically related to his employment. See id. Similarly, the
defendant’s conviction was reversed in Harris v. State, where testimony revealed that the key which
the State urged to be a criminal instrument was a duplicate of keys used by authorized personnel
to open electric meters. Harris v. State, 790 S.W.2d 778 (Tex. App.—Houston [14th Dist.] 1990,
pet. ref’d). Testimony revealed that the key had legitimate uses, specifically that an electrician
could use the key in emergencies. Further, testimony revealed that Harris refused to sell the key
to anyone other than an electrician. Upon finding that the key had not been changed in any way
from its legitimate form, the court held that the State failed to prove that the key was "specially
designed, made, or adapted" only, or even primarily, for use in the commission of a crime. Id.
at 780. 
      Unlike the key in Harris, the bundles of money possessed by Carter were necessarily made or
adapted for some purpose. The evidence establishes that the purpose for which these bundles were
created involved a scam. Carter showed the fake money bundles to Miles when he offered to pay
$300 for a ride. These bundles of money were adapted to look real to deceive others into
exchanging something of value for what appeared to be a large sum of legitimate bills. We find
the evidence sufficient to show Carter’s intent to use the money bundles in the commission of a
crime. Just because Carter can suggest other uses for the bundles of cash on appeal does not make
them legitimate legal uses which would take them out of the purview of 16.01. 
      Finally, Carter urges that there is no evidence that he adapted the bundles of money. The most
proved by the State, he argues, is possession. Although there is no direct evidence showing Carter
made or adapted bundles of money, considering all of the evidence pointing to the fact that Carter
was attempting to “scam” Miles, we believe a rational jury could reasonably infer that to be the
case. See Alvarez v. State, 813 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1991, pet.
ref'd). 
      In summary, we believe that a rational jury could have believed from the evidence that Carter
fabricated the bundles with the intent to use them to defraud Miles or some other person. Thus,
the evidence is legally sufficient to support the jury’s finding of guilt. Point one is overruled. The
judgment is affirmed. 
                                                            BILL VANCE
                                                             Justice
 
Before Chief Justice Davis,
           Justice Cummings, and
           Justice Vance
Affirmed
Opinion delivered and filed December 23, 1997
Do Not Publish